# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES HECKER, on Behalf of Himself and All Others Similarly Situated, ) ) ) ) Plaintiff, ) ) v. ) ) ) PETCO ANIMAL SUPPLIES, INC., PETCO ANIMAL SUPPLIES STORES, INC., PETCO HOLDINGS, INC. LLC, and DOES 1 TO 100, inclusive, ) ) ) ) ) ) ) Defendants. ) | 16 C 10857<br><br>Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Hecker ("Hecker") filed this action seeking unpaid overtime compensation under the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.* ("IWPCA"). Defendants Petco Animal Supplies, Inc., Petco Animal Supplies Stores, Inc., and Petco Holdings, Inc. LLC ("Defendants") have moved to dismiss, transfer, or stay this case in light of related litigation pending in the Southern District of California. For the reasons that follow, Defendants' motion [15] is granted in part and denied in part. Defendants' motion to dismiss or stay this action is denied, but the Court will transfer this action to the Southern District of California pursuant to 28 U.S.C. § 1404(a).

## Background

Hecker filed this action on November 23, 2016, on behalf of himself and similarly situated former Petco assistant store managers. Compl. ¶ 1, ECF No. 1. He claims that Petco improperly classified him and his putative class as exempt from Illinois's overtime pay requirements. *See id.* ¶¶ 11–26.

Prior to filing this action, Hecker opted in to a collective action brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), in the Southern District of California: *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-cv-00644-L-KSC (S.D. Cal. filed Mar. 19, 2013) ("*Kellgren*"). Pl.'s Resp. 3, ECF No. 23. Like Hecker, Erik Kellgren (the lead plaintiff in *Kellgren*) is a former Petco assistant store manager and worked for Petco in Illinois, and Kellgren is represented by some of the same counsel as Hecker is in this case. *Id.* at 3, 6 n.3; *see* Defs.' Mem. Supp. Mot. Dismiss, Ex. 1(B), ECF No. 16-1. Kellgren similarly asserts that he and assistant store managers across the country were misclassified as exempt from the FLSA's overtime pay requirements. Resp. at 1–3. The collective action has been conditionally certified and involves no state law claims. *Id.* at 3. In addition to Hecker, twenty-one members (*i.e.*, about 20 percent) of the putative class in this action have opted in to *Kellgren*. Approximately 80 percent of the putative class elected not to opt in or will have no involvement in *Kellgren*. *Id.* at 4.[1]

*Kellgren* has been actively litigated for over four years. Resp. at 3. The parties state that the deadline to complete all discovery in *Kellgren* is August 2, 2017. *Id.*; *see* Defs.' Mem., Ex. 1(K) ¶ 1. Other pretrial motions, including those related to decertification and final certification of the collective action, are due by September 15, 2017. Defs.' Mem., Ex. 1(K) ¶ 7.

---

[1] The parties have identified an additional seventy-nine members of Hecker's putative class, four of whom did not receive notice in *Kellgren* because they became assistant store managers after the *Kellgren* class notice was generated. Defs.' Mem. at 9, ECF No. 16.

## Analysis

Defendants have moved to dismiss Hecker's case under the "first-filed doctrine," more commonly referred to as "the "first-to-file rule." Alternatively, Defendants have asked the Court to transfer the case to the Southern District of California under 28 U.S.C. § 1404(a) or to stay the action. For the reasons discussed below, the Court concludes that the first-to-file rule does not provide a basis for dismissal, but that transfer is appropriate.[2]

### I. The First-to-File Rule

In moving to dismiss this action under the first-to-file rule, Defendants represent that (1) in the Seventh Circuit, there is a presumption that the first-to-file rule should apply unless the principles guiding transfer under § 1404(a) dictate otherwise, and (2) it is generally proper, where the first-to-file rule applies, to dismiss the second-filed suit. Defs.' Mem. at 7, 11. Neither representation, however, correctly characterizes the law. Rather, the interplay of these doctrines and the proper standards of decision that apply in this area are somewhat murky, necessitating some discussion here.

In *Research Automation, Inc. v. Schrader-Bridgeport International, Inc.*, 626 F.3d 973 (7th Cir. 2010), the Seventh Circuit provided a lengthy discussion of the relationship between the first-to-file rule and § 1404(a). The case involved parties to a contract that each party asserted the other had breached. *Id.* at 975. Each party filed suit in its respective home venue, the first in Illinois, and the second in Virginia. *Id.* The Illinois district court granted a motion to transfer the Illinois case to Virginia, despite the fact that the Illinois case was filed first. *Id.* at 975–76. On appeal, the party opposing transfer to Virginia—*i.e.*, the party who had filed first in Illinois—

---

[2] Defendants list a stay among the requested relief in their motion, but they advance no argument as to why a stay (as opposed to other relief) is appropriate. In any case, because the Court grants Defendants' motion to transfer, it need not reach this issue.

insisted that its status as first filer should prevail. *Id.* at 979. Rejecting this position, the Seventh Circuit eschewed a rigid rule that a first-filed suit should proceed where filed. *Id.* at 980. In doing so, the Court confronted the position that Defendants have taken here: namely, that "there is a rebuttable presumption that the first case should proceed, 'subject to the principles that govern requests for transfer to a more convenient forum.'" *Id.* (quoting *Asset Allocation & Mgmt. Co. v. Western Emp'rs Ins. Co.*, 892 F.2d 566, 573 (7th Cir. 1989)). After undertaking a thorough survey of the first-to-file rule as applied across various circuits, *id.* at 981–82, the court concluded that there is "no such preference" for a first-filed case, and that

> [w]here a case is filed first should weigh no more heavily in the district court's analysis than the plaintiff's choice of forum in a section 1404(a) calculation. We apply the same standard to a section 1404(a) motion regardless of whether there is a second-filed case. The statutory language provides the ultimate touchstone, while the considerations gleaned from judicial glosses will also be applicable to many cases of this type in the sound discretion of the district judge.

*Id.* at 982. The court held that "where a district court faces one of two identical lawsuits and one party moves to transfer to the other forum, the court should do no more than consider the order in which the suits were filed among the factors it evaluates under 28 U.S.C. § 1404(a)." *Id.*

*Research Automation*, therefore, expressly disavows Defendants' position that there is a rebuttable presumption that a second-filed case should be dismissed unless the § 1404(a) factors counsel otherwise. Rather, *Research Automation* indicates that the Seventh Circuit gives no presumptive value to a case's first-filed status. The first-filed status of a case should be no more than a factor a court considers in performing a § 1404(a) analysis.

But *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873 (7th Cir. 2012)—decided nearly two years after *Research Automation*, and on which Defendants rely—suggests that the first-to-file doctrine nevertheless maintains a separate existence within a district court's inherent authority to promote judicial efficiency. In *McReynolds*, the Seventh Circuit affirmed the

4

dismissal of a case filed by a group of plaintiffs in the Northern District of Illinois that "simply duplicated [earlier] litigation already underway" that the plaintiffs had filed in the district. *Id.* at 879. Without citing *Research Automation* (or referencing the first-to-file rule as such), the Seventh Circuit stated that "[t]he district court has broad discretion to dismiss a complaint 'for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another court.'" *Id.* at 888 (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (internal quotation marks omitted)). "A suit is duplicative," the court explained, "if the 'claims, parties and available relief do not significantly differ between the two actions.'" *Id.* at 889 (quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)); *see Northern v. Stroger*, No. 16-3697, 2017 WL 716852, at *1–2 (7th Cir. Feb. 23, 2017) (relying on *McReynolds* in affirming dismissal of a second-filed, duplicative suit).[3]

*McReynolds* also suggests that dismissal is a proper course of action for a district court to take in applying the first-to-file rule to duplicative actions, at least where the actions are filed within the same district. Where the cases are pending in different districts, the Seventh Circuit recently has suggested that a stay, rather than an outright dismissal, may be the better approach in some cases out of concern for comity. *See Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 445 (7th Cir. 2000) ("When comity among tribunals justifies giving priority to a particular suit, the other action (or actions) should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interest. There is no 'first filed doctrine' requiring dismissal of all suits after the first."). The

---

[3]  While *McReynolds* involved duplicative suits filed within the same district, the principle on which it relies has previously been applied to suits brought in different federal districts. *See Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.*, 600 F.2d 1228, 1233 (7th Cir. 1979) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952)).

5

court further observed that "[o]utright dismissal is most likely to be appropriate when . . . the same party has filed all of the suits." *Id.*

What can be gleaned from these cases is that dismissing a second-filed case, as Defendants urge here, is appropriate in the narrow circumstance where a second-filed suit duplicates claims brought in an earlier suit filed by the same party in the same district. But this leaves the question of what importance first-filed status should have in deciding whether to transfer or stay a second-filed case, particularly where the second-filed case is closely related but not entirely duplicative of the first and filed in a different district. The most plausible approach would be to read *Research Automation* as establishing that the first-filed status of a particular suit, while relevant, is never dispositive of a party's request to dismiss, transfer, or stay a second-filed suit. Other district courts in this circuit have adopted this approach, considering the first-filed nature of a suit in light of the other considerations relevant under § 1404(a), and have refrained from dismissing second-filed, related suits. *See Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, No. 16 C 8306, 2017 WL 372313, at *3–6 (N.D. Ill. Jan. 26, 2017) (denying a motion to transfer and noting that the opponent "achieved first-file status, and this is a fact that weighs in [its] favor in the overall Section 1404 analysis"); *Aliano v. Quaker Oats Co.*, No. 16 C 3087, 2017 WL 56638, at *2–4 (N.D. Ill. Jan. 4, 2017) (analyzing the first-filed status of a claim as part of conducting a § 1404(a) analysis and finding transfer appropriate, but staying the second-filed case due to improper venue in the transferee court); *Humphrey v. United Healthcare Servs., Inc.*, No. 14 C 1157, 2014 WL 3511498, at *3–4 (N.D. Ill. July 16, 2014) (applying the first-to-file rule, confirming that § 1404(a) would not counsel a different result, and granting transfer of the second-filed case); *Askin v. Quaker Oats Co.*, No. 11 CV 111, 2012 WL 517491, at *5–7 (N.D. Ill. Feb. 15, 2012) (applying the first-to-file rule, noting that § 1404(a) would not

counsel a different result, and staying the second-filed case); *Bell v. Bimbo Foods Bakeries Distribution, Inc.*, No. 11 C 03343, 2011 WL 5981011, at *1–3 (N.D. Ill. Nov. 28, 2011) (noting a "disinclination to dismiss" claims under the first-to-file rule, denying a motion to transfer due to lack of argument, and reserving ruling on staying the case).

In this case, because Hecker is not a named plaintiff in *Kellgren*, his claims do not duplicate those in *Kellgren*, and the two suits were filed in different districts, the Court denies Defendants' motion to dismiss this case on the basis of the first-to-file rule. The Court will, however, entertain Defendants' request to transfer the case to the Southern District of California and consider the first-filed status of the *Kellgren* action in evaluating Defendants' request under § 1404(a).

## II. Motion to Transfer Under 28 U.S.C. § 1404(a)

Under § 1404(a), courts consider "the convenience of parties and witnesses" and the "interest of justice" in determining whether to transfer an action. 28 U.S.C. § 1404(a).[4] It is the movant's burden to establish, "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). With regard to convenience, "courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum," as well as "the location of material events and the relative ease of access to sources of proof." *Research Automation*, 626 F.3d at 978.[5] The interest of justice element reflects concern for "efficient

---

[4] Section 1404(a) also requires that the transferee district is one "where [the action] might have been brought." *Id.* Here, the parties do not dispute that this action could have been brought in the Southern District of California, where Defendants are headquartered, and therefore reside, and substantial events giving rise to Hecker's claim occurred. *Id.* § 1391.

[5] While the plaintiff's choice of forum is often of significant importance in deciding whether to grant a motion to transfer under § 1404(a), the Seventh Circuit has explained that "where, as here, the case involves two identical suits in distinct venues, this factor loses its significance entirely." *Id.* at 979.

administration of the court system," including factors such as "docket congestion and likely speed to trial in the transferor and potential transferee forums," "each court's relative familiarity with the relevant law," "the respective desirability of resolving controversies in each locale," and "the relationship of each community to the controversy." *Id.* The interest of justice element "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.* Evaluation of these factors is entrusted to the discretion of the district court. *Id.* at 977–78.

### A. Convenience

Defendants contend that their "convenience would be maximized by litigating in California, where [they are] headquartered and where discovery and motion practice are already well under way, rather than duplicating efforts in Illinois." Defs.' Mem. at 12. They further argue that the decisions giving rise to the assistant store manager wage classification were made from Defendants' headquarters in California, and that key witnesses and documents are located there. *Id.* For his part, Hecker argues that it is more convenient for him to litigate in Illinois, where he and the putative class members reside. Resp. at 9–10. He further asserts that "[m]ost of the relevant documents and witnesses are in Illinois." *Id.* at 10.

On balance, the Court is persuaded that California is a marginally more convenient venue in which to hear this action. As explained in more detail below, Defendants are correct to point out that this action, which is substantially related to *Kellgren*, would be more convenient for them to litigate in California. By contrast, Hecker's argument that Illinois is a more convenient forum falls somewhat flat, given his decision to opt in to *Kellgren* in California, where Kellgren, also an Illinois resident, is represented by some of the same counsel. *See Aliano*, 2017 WL

---

While the suits at issue in this case are not identical, they are significantly related, as explained below, and even if the Court were to credit Hecker's choice of forum despite his decision to opt in to *Kellgren*, concern for the other convenience factors and the interest of justice would still warrant transfer.

56638, at *3 ("[Plaintiff] (with his same counsel) has filed multiple actions in the Central District of California in the past two years and is still litigating those cases there. [Plaintiff] can hardly claim, therefore, that litigating in that district would be inconvenient for him."); *Mazzantini v. Rite Aid Corp.*, 829 F. Supp. 2d 9, 11 (D. Mass. 2011) ("The claim by Plaintiff that she would be inconvenienced by having to travel to Pennsylvania rings hollow, given that she herself opted into the [earlier] litigation in Pennsylvania as a plaintiff long before she even filed this lawsuit."). That said, Hecker is only an opt-in class member in *Kellgren*, as opposed to a named plaintiff, and his class would likely prefer litigation in Illinois. But the potential preferences of the putative class members are only a minor consideration, given that, at least at this juncture, Hecker is the only plaintiff to this action, in which a class has not been certified. On balance, consideration of the parties' convenience weighs in favor of transfer given the parties' participation in the *Kellgren* litigation, but only slightly.

The parties dispute whether California or Illinois would be more convenient for witnesses, but neither identifies specific witnesses or what their testimony might be, and the documents and evidence in this case are likely to be easily transferable between states. *Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 945–46 (N.D. Ill. 2015) (holding that the parties' failure to identify specific witnesses and testimony prevented the court from determining what would be more convenient); *Landis v. Warner Chilcott (US), LLC*, No. 10-CV-5283, 2010 WL 5373664, at *3 (N.D. Ill. Dec. 15, 2010) ("Because documents now are easily scanned, stored, and electronically transmitted, moving them no longer creates the onerous burden it may once have imposed."). Furthermore, to the extent any witnesses and documents relevant to Defendants' wage policies are more likely to be located in a particular forum, they are more likely to be in California, where Defendants are headquartered and where their decisionmaking

presumably took place. *See Fryda v. Takeda Pharm. N. Am., Inc.*, No. 1:11-CV-00339, 2011 WL 1434997, at *3 (N.D. Ohio Apr. 14, 2011) (holding that, in "a wage dispute suit alleging that, as a matter of policy, the [d]efendants mis-classified an entire class of their employees and consequently withheld overtime pay," the most significant witnesses and documents were likely in the defendants' principal place of business). Moreover, it is safe to conclude that, for reasons explained in greater detail below, Hecker's case will likely entail significant discovery that is duplicative of that in *Kellgren*. Many of the key witnesses and documents have likely already been subpoenaed and produced in connection with *Kellgren*. It would be inconvenient (not to mention wasteful) to repeat this discovery in Illinois. Thus, the convenience of non-party witnesses, as well as access to documents or other sources of proof, weighs in favor of transfer, but again, only marginally.

Finally, while the policy decisions giving rise to Hecker's claim took place in California, he and the putative class members worked in Illinois, and their job duties and actions here may be relevant to whether Defendants' classification decision was proper. Thus, material events giving rise to Hecker's claims occurred in both venues, and this factor is neutral in regard to transfer.

On balance, therefore, California is a marginally more convenient forum in which to hear this action.

### B. Interest of Justice

While the convenience inquiry makes only a marginal case for transfer, the interest of justice inquiry slants heavily in favor of transfer. First, this case is substantially similar to *Kellgren* in a number of ways, such that it would be most efficient to transfer and consolidate or otherwise coordinate this case with *Kellgren*. *See Coffey*, 796 F.2d at 221 ("[R]elated litigation

should be transferred to a forum where consolidation is feasible."). Where, as here, a party files a class action that substantially overlaps with the parties, issues, and relief requested in an earlier-filed class action in another district, transfer comports with the efficient administration of justice. *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063–64 (N.D. Ill. 2015) ("[T]he apparent trend among Courts in this District is to grant transfer motions under the key geographic factors present here: the defendant is located in the transferee district, two similar class actions are pending in different federal districts and one of the class actions is pending in the transferee district."); *accord Humphrey*, 2014 WL 3511498, at *2–3; *De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at *10–11 (N.D. Ill. Mar. 18, 2013); *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 915–16 (N.D. Ill. 2009); *see also Aliano*, 2017 WL 56638, at *3 ("Allowing separate suits to proceed in different districts—cases that involve the same defendant, seek the same remedy, and deal with substantially similar factual and legal issues—would not serve the efficient administration of the court system.").

Hecker disputes whether the actions are sufficiently similar. First, he argues that the plaintiff groups are different because Hecker seeks to represent Illinois store managers, only some of which have opted in to the nationwide collective action in *Kellgren*. Resp. at 4. This argument has some superficial appeal. Because only 20 percent of the putative class members have opted in to *Kellgren*, the composition of the class will differ considerably from that of the *Kellgren* collective action.[6] As Defendants point out, however, there would nevertheless be some unfairness in requiring Defendants to litigate a class action raising similar issues here, just because members of Hecker's putative class elected not to opt in to *Kellgren*. *Castillo v. Taco*

---

[6] Defendants point out that courts have considered parties sufficiently similar where "class members overlap." Defs.' Mem. at 9 (citing *Humphrey*, 2014 WL 3511498, at *3; *Askin*, 2012 WL 517491, at *4). But here, it is clear that the class members will not substantially overlap, because the majority of putative class members in this action elected not to opt in to the *Kellgren* action.

*Bell of Am., LLC*, 960 F. Supp. 2d 401, 405 (E.D.N.Y. 2013) (holding that the defendants "should not be required to send a second class notice to individuals who have already received such notice but have elected not to participate in [earlier, related litigation]," observing that "it is precisely such concerns that have led courts here and in other jurisdictions to dismiss or transfer second filed FLSA actions in favor of an earlier filed similar action," and collecting cases);[7] *accord Walker v. Progressive Cas. Ins. Co.*, No. C03-656R, 2003 WL 21056704, at *2 (W.D. Wash. May 9, 2003).

In any case, because Hecker has opted in to *Kellgren*, his class-dissimilarity argument puts the cart before the horse. As of now, Hecker is the only litigant in this action. As a member of the *Kellgren* collective action, issues decided in that case, many of which are similar to this case, could preclude or influence his pursuit of this action, and, at the very least, much of the discovery he will seek is likely duplicative. His participation in each case supports transfer in the interests of judicial economy and the efficient administration of justice. *See Copello v. Boehringer Ingelheim Pharm. Inc.*, 812 F. Supp. 2d 886, 888–90 (N.D. Ill. 2011) (dismissing the claims of a plaintiff who had opted in to an earlier class action in another district that raised duplicative claims).

To that end, the issues raised in *Kellgren* are sufficiently similar to those here such that transfer serves the efficient administration of justice. The factual basis and legal theory underlying both cases are the same: Defendants misclassified Hecker and other assistant store managers as exempt from overtime. *See* Defs.' Mem., Ex. 1(B) ¶¶ 30–42; Compl. ¶¶ 12–26. Granted, *Kellgren* is an FLSA case, whereas here, Hecker's action arises under the IMWL and IWPCA. But this difference is inconsequential, because each case involves the same core issue.

---

7       Hecker argues that *Castillo* is inapposite because the *Castillo* plaintiffs were permitted to opt in to the earlier litigation after they filed their second, duplicative suit. Resp. at 8–9. The court did not rely on this circumstance, however, in its reasoning.

*Kellgren* presents the question of whether Defendants have properly classified Petco assistant store managers as exempt under the FLSA's exemption for employees "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); *see* Defs.' Mem., Ex. 1(D), at 2. The same classification decision is at issue in this action, and Illinois's exemption mirrors the FLSA's. 820 Ill. Comp. Stat. 105/4a(2)(E); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 376 (7th Cir. 2005) (noting that a violation of the IMWL's executive exemption is "contingent on establishing a violation under the FLSA"); *Delgado v. Roadco Transp. Servs., Inc.*, 159 F. Supp. 3d 865, 871 & n.3 (N.D. Ill. 2016) (holding that the plaintiff was "not exempt from the FLSA's overtime provisions under the executive exemption" and, therefore, "the result would be the same under the IMWL"). Accordingly, whether the court in *Kellgren* determines that Defendants misclassified Kellgren and Hecker will bear directly on Hecker's claims here.[8] It would be inefficient to litigate this question simultaneously in two forums, which could produce inconsistent results. This concern strongly weighs in favor of transfer.

The other factors relevant to the interest of justice inquiry are neutral or support transfer. As a general matter, the Southern District of California's caseload is smaller and its average times from filing to disposition and trial are shorter, which favors transfer. *See* U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics (Dec. 31 2016), http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/12/31-3.

---

[8] Hecker argues that his Illinois claims are meaningfully different because he might recover punitive damages under Illinois law, but not under the FLSA. Resp. at 5. This difference in potential relief, however, does not detract from the significant similarities between the two actions that support their being considered together in the interest of justice. Hecker further argues that "Petco is not bound by, and may raise different defenses and arguments than those it raised in *Kellgren*." *Id.* at 5 n.2. But, insofar as *Kellgren* proceeds and the court decides whether Defendants misclassified their assistant store managers, both Defendants and Hecker, as a member of the class, may be bound by that result, given that the IMWL's exemption mirrors the FLSA. For these reasons, Hecker's reference to *Wilkie v. Gentiva Health Services, Inc.*, No. CIV. 10-1451 FCD/GGH, 2010 WL 3703060 (E.D. Cal. Sept. 16, 2010), in which the court denied a motion to transfer in part because "California law is significantly different than [the] FLSA," *id.* at *4, is unavailing.

More to the point, *Kellgren* has progressed significantly, while Hecker's case here is in its infancy. If the two can be consolidated or coordinated, Hecker is likely to secure speedier relief in the Southern District of California. Hecker believes otherwise, arguing that the progress of *Kellgren* should militate against transfer and highlighting what he believes will be the need for discovery that was not conducted in *Kellgren* and *Kellgren*'s upcoming fact discovery deadline. Resp. at 6–7. Defendants disagree, maintaining that all necessary discovery is being or will be conducted in *Kellgren*. Defs.' Reply 5–7, ECF No. 25. But whether additional discovery is needed is a determination that the *Kellgren* court is uniquely equipped to decide, having presided over *Kellgren* for over four years. Transfer will permit the *Kellgren* court to determine the most efficient way of proceeding, whether by consolidation or other coordination. *Rosen*, 152 F. Supp. 3d at 1064 (listing the various means in which two related actions could be coordinated or consolidated in the transferee district in the interests of judicial efficiency); *De Falco*, 2013 WL 1122825, at *11 (declining to "allow[] discovery and motion practice . . . to proceed in two different district courts," where doing so "would result in duplicative document productions, depositions, and briefing"); *HFC Commercial Realty, Inc. v. Levine*, No. 90 C 2921, 1990 WL 186082, at *5 (N.D. Ill. Nov. 9, 1990) (noting the preference for transferring a related case to a transferee district for consolidation, or at minimum, coordination of discovery efforts).[9]

Moreover, while Hecker's claims arise under Illinois law, this Court's familiarity with Illinois law does not weigh against transfer. While some federal courts sitting in diversity have

---

[9] Hecker's reference to *Zajonc v. Morgan Stanley*, No. 4:14-cv-05563-EMC (N.D. Cal. filed Dec. 19, 2014), and *Devries v. Morgan Stanley*, Case No: 9:12-cv-81223-KAM (S.D. Fla. filed Aug. 8, 2012), does not persuade the Court otherwise. Resp. at 7–8. The defendants in these cases sought to consolidate in Florida, but their motion to transfer was rejected, because the California case involved unique, California-law claims that could not be accommodated with the discovery timeline in the Florida case. *See* Reply, Ex. 2, at 5, ECF No. 25-2. Here, Hecker's claims under state law are directly related to the FLSA claims in the *Kellgren* action and thus can be more readily coordinated or consolidated with *Kellgren*.

14

emphasized the import of familiarity with state law to the interest of justice inquiry, *e.g.*, *Tawil v. Ill. Tool Works Inc.*, No. 15 C 06808, 2015 WL 7889036, at *4 (N.D. Ill. Dec. 4, 2015), others have downplayed its importance, *e.g.*, *Peterson v. U.S. Steel Corp.*, 624 F. Supp. 44, 46 (N.D. Ill. 1985) ("[F]ederal district courts must often undertake the task of deciding foreign law. Further, familiarity with state law does not weigh heavily in consideration of a motion to transfer."); *accord Hyatt Franchising*, 2017 WL 372313, at *4; *Jaramillo*, 664 F. Supp. 2d at 917. Here, however, because the Illinois and FLSA overtime exemptions mirror each other, this neutral factor is of little significance. In addition, Illinois and California each have an important connection to and interest in resolving the controversy—Illinois because it will affect employees here, and California because the conduct of three of its corporations is at issue. These concerns are also neutral and do not significantly affect the interest of justice inquiry.

For these reasons, the Court concludes that, because of the substantial similarities between this case and *Kellgren*, considerations underlying the interest of justice weigh heavily in favor of transfer. Given this, and in light of the Court's determination that the relevant convenience factors weigh slightly in favor of transfer, the Court grants Defendants' request to transfer this case to the Southern District of California.[10]

---

[10] In reaching this conclusion, the Court further notes that a New York district court presiding over a nearly identical state law wage suit brought by a *Kellgren* collective class member recently reached the same conclusion on similar grounds. *See generally Michel v. Petco Animal Supplies Stores, Inc.*, No. 16CV1838LDHPK, 2017 WL 2198962 (E.D.N.Y. May 18, 2017).

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss, transfer, or stay this case [15] is granted in part and denied in part. Defendants' motion to dismiss or stay this action is denied, but the Court hereby transfers this case to the Southern District of California forthwith. This case is hereby terminated on this Court's docket.

**IT IS SO ORDERED.**　　　　　　　　　　　**ENTERED: 6/7/17**

_____
**JOHN Z. LEE**
**United States District Judge**